## JAKE POPP v. STATE.

No. A-5102.   Opinion Filed Oct. 14, 1925.
(239 Pac. 945.)

Robt. E. Smith, for plaintiff in error.

George F. Short, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for the State.

DOYLE, J.   The information in this case charges that in Garfield county, August 3, 1923, "one Jake Popp did then and there unlawfully and willfully barter and sell certain spirituous, vinous, and intoxicating liquors, to-wit, about one quart of corn whisky, which whisky then and there contained more than one-half of 1 per

cent. of alcohol and capable of being used as a beverage, to one George Reddick."

On the trial, the jury returned a verdict finding him guilty as charged in the information and fixing his punishment at a fine of $100 and confinement for 60 days in the county jail. To reverse the judgment rendered on the verdict, he appeals.

The petition contains 11 assignments of error, all of which are argued in his brief.

This conviction was had on the testimony of G. W. Reddick, who testified that he was engaged in the auto salvage business down in the hollow on East Broadway, in the city of Enid; that he had known Jake Popp, defendant, about a year and a half; that he knew Sheriff Lincoln and Bee De Monbrun, federal officer; that on the 3d day of August, 1923, he took a car and left his shop with W. H. Eisberg and drove out to Jake Popp's place, about seven miles southwest of Enid; that they found defendant at home and also saw a lady there; that Mr. Eisberg asked defendant if he had any whisky, and defendant said "Yes, I always have it." Mr. Eisberg told defendant that he wanted a gallon; that witness then asked defendant what it was worth, and defendant said $12, but he would let it go for $10, then witness took from his pocket a 10-dollar bill and gave it to defendant, they all walked out to the barn and there defendant took a 2-gallon jug with a gallon of whisky in it and carried it to witness' car; that defendant then asked if he could ride back with them and witness told him he could, and they started back to the city; that he let defendant out near the courthouse square, and then drove to Mr. Eisberg's garage, there Mr. Eisberg took the jug in the car and poured a part of the whisky into a jug he had there. Witness took the jug with what was left. Mr. Eisberg said he needed some parts for his car and he drove to

witness' shop, there witness poured out what was left in the jug and it filled two pint bottles, these he carried to the sheriff's office and the sheriff put labels on the bottles and marked "G. W. R." and the date "August 3d." He identified two bottles that bore such labels.

On cross-examination he stated that Mr. Eisberg was a threshing machine man and left as near as he remembers in September some time for Kansas; that he knew that the defendant had not been arrested until after Mr. Eisberg left for Kansas; that he did not give the whisky to Eisberg, that he just took it; that he had sold defendant a part of an automobile, which afterwards it appeared had been stolen, and somebody told him that they took Jake's car from him by reason of finding the stolen part thereon; that he had never made that right with the defendant because the defendant had never asked him to make it right; that he had a sheriff's commission at the time and had told Sheriff Lincoln that he was going to buy the whisky from Jake Popp.

Sheriff Lincoln testified that S. E. Campbell, H. L. McKee, and Bee De Monbrun were in the office when Reddick brought in two pint bottles of whisky, and the bottles were labeled at the time; that previously George Reddick told him that he was going to buy or attempt to buy liquor from Jake Popp.

Bee De Monbrun, federal prohibition agent, testified that he was present when George Reddick brought to the sheriff's office two pint bottles; that he tasted the contents of one and it contained corn whisky.

S. E. Campbell testified that he was present when the bottles were labeled, that he had heard Reddick talk about what he was going to do and knew Reddick was going to buy liquor from Jake Popp, and knew that he was going to take some fellow along.

At the close of the state's evidence there was a motion by defendant for a directed verdict, which was overruled.

As a witness in his own behalf, defendant testified that he resides about seven miles southwest of Enid with his wife and five children; that he is afflicted with tuberculosis; that George Reddick and Mr. Eisberg came to his place on Sunday morning, the 22d of July, and Mr. Eisberg came to the house and asked him if he could do his threshing and he told him he had just finished stacking and didn't want it threshed at that time; that George Reddick stayed in the car, that is about all that was said; that he never sold any whisky or other intoxicants to either Reddick or Eisberg; that his father lives 12 miles east of Enid, and 22 miles from the farm occupied by defendant; that he with his family went to his father's home on July 26th to help his father thresh and on July 29th he became overheated and was sick and unable to do any work until August 7th; that he remained at his father's home from July 26th to August 7th, and was not at his own home during that time; that his sister-in-law and her children stayed at his home while he was absent; that his brother went to Kansas with Mr. Eisberg; that he has not spoken to the witness Reddick since Reddick sold him an automobile crank case which afterwards proved to have been stolen.

J. H. Schroeder testified that he lives near defendant's father and recalled the time when the defendant was sick at his father's home, the latter part of July and the first part of August, and saw him at his father's home several times covering a time from one to eight days.

Henry Herber testified that he had known defendant for many years and commenced to work for him in April, 1923, and continued to work for him until September;

that he went with defendant to his father's home on July 26th, to help his father thresh and stayed there until the 7th or 8th of August; that while working there the defendant was taken sick and remained there until he returned to his own home August 7th.

Mr. Lowery testified that he was the owner of the farm occupied by defendant, frequently visited the place and was there when defendant finished stacking his wheat, about the 21st day of July, was there shortly afterwards on several occasions and defendant was not at home.

The judgment of the trial court, overruling defendant's demurrer to the information, was excepted to and is here assigned as error.

Counsel contends that the allegation, "certain spirituous, vinous, and intoxicating liquors," together with the allegation "containing more than one-half of 1 per cent. of alcohol and capable of being used as a beverage" makes the information duplicitous. We think these allegations may be treated as mere redundance. It follows that the demurrer was properly overruled.

A motion for a new trial was filed on the ground that the verdict is contrary to the evidence, newly discovered evidence, and surprise which by ordinary diligence and prudence defendant could not anticipate and guard against, which motion was duly verified by defendant, and is supported by the affidavit of Bert Atherton, in substance, as follows:

That he was present in the courtroom and heard George Reddick testify that he purchased liquor from said defendant on August 3, 1923, and after looking up dates and checks affiant states that he finished threshing July 14, 1923, and thereafter he kept cattle in the pasture on the farm occupied by said defendant; that

on July 28, 1923, he sold some lambs and he recalls that on this date and thereafter for 10 days he was compelled to water the cattle on said premises at Jake Popp's well; that the well was in bad condition and it was his desire to have said defendant fix said well; that he went to the home of Jake Popp from day to day, trying to find said defendant; and said defendant and his family were not at home during said time; that from inquiry he learned that defendant was at his father's place; that he lives only about half a mile from the residence of said defendant and was watching for his return and said defendant could not have been at his residence on August 3, 1923, without affiant's knowledge; that he never gave this information to said defendant or anyone else until after the trial of said defendant; at which time he told defendant that he had heard Reddick's testimony and knew of his own knowledge that this transaction could not have happened as testified to by said Reddick.

Jake Popp, defendant, on oath, states that he had no knowledge before said trial that said Eisberg would figure in said cause; that he has made inquiry as to the time said Eisberg left the state and has been informed that he went to Kansas before August 3, 1923; that said Eisberg will testify that he was never present at the home of this defendant when said George Reddick bought liquor, and that no liquor was sold by defendant in his presence.

Affiant further states that he had no knowledge as to who called at his home during his absence, and he used every effort in talking to men whom he thought had been there, and unfortunately did not talk to Bert Atherton before said trial; that if he is granted a new trial in said cause the said Atherton will be present and testify as set forth in his affidavit.

Upon a review of the testimony and the undisputed facts and taking into account the ill will of the prosecuting witness by reason of his sale to defendant of a stolen crank case, and his voluntary statement on the witness stand that "he did not think that Eisberg, if present, would tell the truth about the sale, because he was a boozer," also taking into account the fact that the sheriff and undersheriff were permitted to testify to previous conversations had with the prosecuting witness wherein he stated he was going to buy or attempt to buy whisky from the defendant, and that this was hearsay testimony, is not open to question, we are of opinion that upon the showing made of surprise and newly discovered evidence, the motion for a new trial should have been granted.

The judgment appealed from herein is therefore reversed, and a new trial awarded.

BESSEY, P. J., and EDWARDS, J., concur.